IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


CHARLES V. DENINNO, and      )
CHARLES V. DENINNO, TDBA,      )
                                    )
                  Plaintiffs,      )
                                      )
           vs.                    )      Civil Action No. 10-280
                                    )      Magistrate Judge Maureen P. Kelly
HOWARD DAVIDSON, and      )
THE TOWNSHIP OF PENN HILLS,      )      [ECF No. 45]
                                    )
                Defendants.      )


## OPINION


**KELLY, Magistrate Judge**


      On February 26, 2010, Plaintiff Charles V. Dennino ("DeNinno"), a landowner, commenced this action under 42 U.S.C. § 1983 alleging that Defendants Howard Davidson ("Davidson") and the Township of Penn Hills ("Penn Hills") violated his First Amendment right to free speech as well as his right to substantive due process under the Fourteenth Amendment to the United States Constitution. The violations are alleged to arise out of a long-standing denial of an occupancy permit to a parcel of land located within Penn Hills. Defendants have filed a Motion for Summary Judgment [ECF No. 45] and for the reasons that follow, the Motion will be granted in part and denied in part.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Prior Litigation Between the Parties

The dispute between the parties over DeNinno's use of his land dates back to 1999 and

has been the subject of prior litigation in both federal and Pennsylvania state courts.  As

summarized by the United States Court of Appeals for the Third Circuit:

> In October 1999, Penn Hills approved DeNinno's site plan for an industrial park
> and issued a grading permit.  The grading permit was revoked some three years
> later when Appellee Howard Davidson – who was Director of the Penn Hills
> Planning Department – determined that DeNinno was developing the property in
> a manner inconsistent with the site plan.  DeNinno continued grading the
> property, however, and was cited for doing so without a permit.
>
> After losing his grading permit, DeNinno submitted several additional site plan
> applications to the Penn Hills Planning Commission (Commission).  Each
> application was denied for various reasons and Davidson advised DeNinno in
> writing of the remedial action required to obtain approval.

DeNinno v. Municipality of Penn Hills, 269 Fed. Appx. 153, 155 (3d Cir. 2008).   The site plan

dispute was litigated concurrently with a neighbor's border dispute over ownership of an

abandoned railroad right of way adjacent to both lots.  See Dellach v. DeNinno, 862 A.2d 117

(Pa. Super. 2004).  This dispute was resolved unfavorably to DeNinno in Pennsylvania state

courts and evidently engendered further ill will between DeNinno and Davidson, who at one

point, was asked by local police to determine whether DeNinno had improperly placed concrete

blocks on his neighbor's parking lot based upon his understanding of the property borderline.

DeNinno v. Municipality of Penn Hills, 269 Fed. Appx. at 155.

Pursuant to an Order entered by the Court of Common Pleas of Allegheny County,

DeNinno's site plan was to be approved by the Penn Hills Planning Commission at some point in

2005, subject to ten agreed upon preconditions.   Id. at 156.  DeNinno was only able to satisfy

two of the conditions, and litigation over a grading permit followed.  "In late 2005, the Court of

Common Pleas of Allegheny County entered an order requiring DeNinno to submit a site map bearing a surveyor's seal to the Commission and ordering Penn Hills to reinstate his grading permit as long as he produced the map and complied with the ten conditions specified.  Although DeNinno complied with only two of the ten conditions, he filed a thirty-one count federal complaint," alleging claims under the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution, including claims for the violation of his procedural due process rights.  Id. at 155-156.  The Court of Appeals affirmed the entry of summary judgment in favor of all Defendants, finding the majority of DeNinno's claims were not yet ripe.  Id. at 158.

**B.    Current Dispute**

Subsequent to the prior federal litigation, DeNinno apparently abandoned his original site plan for developing the property and ceased all grading activity.   DeNinno used the land to store equipment for his demolition business and to store and sell aggregate stone pursuant to a mercantile license issued by the Penn Hills School District.[1]  In 2006 through 2007, Penn Hills adopted the position that DeNinno's occupancy of the land was contingent on the 2005 site plan, which required grading after the filing of appropriate survey.  [ECF No. 52-7, p. 12].  Thus, in the absence of an appropriate survey, a grading permit could not be issued and the land could not be occupied.  Id.

DeNinno's sale of aggregate on his property required employment of a backhoe to move the aggregate as it was delivered and sold.  Penn Hills' employees and Davidson, under the impression that the backhoe was actually being operated to grade the property without the requisite permit, began issuing multiple citations for ordinance violations and denied DeNinno an occupancy permit for the use of his land.   The issuance of citations eventually led to the filing

---

[1] The undisputed evidence is that the School District's issuance of a mercantile license is for purposes of taxation and does not implicate or override local zoning or land use regulation.  [ECF No. 48-2, p. 29].

of a "private criminal complaint" by Davidson on behalf of the municipality against DeNinno. [ECF No. 52-7, pp. 4-6]. DeNinno's statutory appeal of the resulting convictions was heard in the Court of Common Pleas of Allegheny County, Pennsylvania in August, 2007. DeNinno was unsuccessful at the trial court level, but contends the record unequivocally demonstrated that he was not grading his property and that he was not in violation of any municipal ordinance. Accordingly, DeNinno began the appeal process in the Pennsylvania Superior Court.

In addition to the citations for grading, DeNinno was separately and repeatedly cited by Davidson for the use of a trailer on the premises, as well as a port-o-john. [ECF No. 52-6, pp. 13- 18]. DeNinno was under the impression that both uses were agreed upon during an attempted settlement of claims, but beginning in early 2007, he received multiple citations for these nonconforming uses of his land. Finally, on December 17, 2007, Defendant Penn Hills and DeNinno entered into a settlement agreement (the "2007 Settlement Agreement") to resolve all underlying land use disputes. [ECF No. 52-3 pp. 6-13].

According to the terms of the 2007 Settlement Agreement, DeNinno was to discontinue his appeal to the Pennsylvania Superior Court, remove a fence and the trailer, plant some vegetation and make a $5,000 donation to Penn Hills, an amount roughly equal to the outstanding fines for ordinance violations. [ECF. No. 52-3, pp. 6-13, 14]. DeNinno satisfied all conditions which were not weather dependent or contingent upon resolution of the pre-existing property line dispute. [ECF No. 52-2, pp. 13-22].

The 2007 Settlement Agreement also required Penn Hills to grant DeNinno an occupancy permit to use his land as a stockyard and to discontinue and settle all outstanding citations. Penn Hills' performance of the Agreement was contingent only upon the DeNinno's performance of those conditions unrelated to the weather and prior property line dispute. [ECF No. 52-2, p. 8].

In the months (and years) following the execution of the 2007 Settlement Agreement, however, Penn Hills failed to issue the occupancy permit and also failed to withdraw and discontinue all citations which had previously been issued against DeNinno for ordinance violations. [ECF No. 52-2, pp. 25-32, 52-3, pp. 18-24, ECF No. 52-1, pp. 4, 7].

It is undisputed that on March 6, 2008, DeNinno received notification from the Clerk of Courts for Allegheny County certifying his indebtedness in the amount of $5,053.00, representing the sum owed for the citations issued by Defendants for Plaintiff's alleged ordinance violations. [ECF No. 52-3, pp.14-17]. Defendants belatedly dismissed the majority of these citations in November 12, 2008, almost 11 months after the 2007 Settlement Agreement was executed. [ECF No. 52-3, p. 18]. Unbeknownst to DeNinno, Penn Hills did not dismiss all of the citations as required. A number of the citations subject to the 2007 Settlement Agreement apparently remained outstanding and in early 2011, DeNinno received notice of a hearing before the Penn Hills municipal magistrate and a Notice of Impending Bench Warrant for his arrest. After retaining counsel and preparing for the hearing, DeNinno was belatedly informed that the outstanding citations were withdrawn. [ECF No. 52-1, pp. 2-7].

DeNinno alleges that Defendant Davidson used his position and authority to override the 2007 Settlement Agreement and intentionally and wrongfully withhold the issuance of an occupancy permit, delaying issuance until this Court's intervention in January 2012. It is undisputed that in the months and years following the execution of the 2007 Settlement Agreement, DeNinno sought the issuance of the agreed upon occupancy permit but Defendants never complied. [ECF No. 52-1, pp. 12-17].

Defendants have filed a Motion for Summary Judgment [ECF No.45], contending that DeNinno's claims are barred by the applicable statute of limitations as no actionable conduct

occurred within two years preceding the filing of DeNinno's Complaint on February 26, 2010. [ECF No. 45]. Defendants further contend that the facts adduced through discovery are insufficient as a matter of law to present a jury question for the alleged violation of DeNinno's rights under the First and Fourteenth Amendments to the United States Constitution. Defendants rely upon qualified immunity and Penn Hills' asserted lack of direct involvement in the alleged deprivation of DeNinno's rights as defenses to this action. Finally, Defendants contend that the doctrine of abstention applies to preclude this Court's involvement in what it characterizes as a state court proceeding.

DeNinno has filed a Brief in Opposition to Defendants' Motion for Summary Judgment and supporting exhibits. [ECF Nos. 51, 52, 53]. The Motion is now ripe for review.

## II.    STANDARD OF REVIEW

Summary judgment is warranted only where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating to the court that there is an absence of evidence to support the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). See Conoshenti v. Public Service Electric & Gas Company, 364 F.3d 135, 140 (3d Cir. 2004). When the moving party has met this burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e) (2). The mere existence of some evidence favoring the non-moving party, however, will not defeat the motion. There must be enough evidence with respect to a particular issue to enable a reasonable jury to find in favor of the non-moving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). See McGreevy v. Stroup, 413 F.3d 359, 363-64 (3d Cir. 2005). In

evaluating the evidence at the summary judgment stage, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. Matreale v. New Jersey Dep't of Military & Veterans Affairs, 487 F.3d 150, 152 (3d Cir. 2007).

## III.  DISCUSSION

### A.  Motion to Dismiss per Twombly and Iqbal

Citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937 (2009), Defendants contend that the Complaint fails to state a cause of action upon which relief can be granted because "there are no facts set forth to support any allegation of any actions taken between February 26, 2008 and February 26, 2010, which would bring the claim within the applicable statute of limitations." [ECF No 46, p.6]. As more fully set forth herein, DeNinno has sufficiently alleged conduct within the applicable statute of limitations supporting his First Amendment retaliation and Fourteenth Amendment substantive due process claims and, as such, Defendants' Motion for Summary Judgment on this basis is denied.

### B.    Statute of Limitations

Defendants argue that they are entitled to summary judgment in their favor on DeNinno's claims because they are barred by the applicable statute of limitations. Noting that DeNinno's claims appear entirely premised on conduct that occurred prior to February 26, 2008, Defendants assert they are untimely.

It is well established that the statute of limitations for Section 1983 claims is governed by the applicable state's statute of limitations for personal-injury claims. Gilarno v. The Borough of Freedom, 2010 WL 3522112 at *4 (W.D. Pa. Sept. 8, 2010) (NO. 2:10-CV-71). See Wallace v. Kato, 549 U.S. 384, 387 (2007). In Pennsylvania, a personal injury claim must be filed within two years. 42 Pa. C.S. § 5524(2) (2004). Thus, DeNinno's Section 1983 claims are subject to a

two year statute of limitations.  <u>Gilarno</u>, 2010 WL 3522112 at *4.

Although the applicable statute of limitations period is governed by state law, federal law dictates when a Section 1983 cause of action accrues.  <u>Wallace</u>, 549 U.S. at 388.  Generally, a cause of action accrues and the statute of limitations begins to run "when the plaintiff knew or should have known of the injury upon which its action is based."  <u>Sameric Corp. of Delaware, Inc. v. City of Philadelphia</u>, 142 F.3d 582, 599 (3d Cir. 1998).  That is, "a Section 1983 claim accrues at the time when the injury is sustained" or "'when the plaintiff has a complete and present cause of action.'"  <u>Koehnke v. City of McKeesport</u>, 350 Fed. Appx. 720, 723 (3d Cir. 2009), <u>cert.</u> <u>denied</u>, ___ U.S. ___, 130 S. Ct. 2404 (2010), quoting <u>Wallace</u>, 549 U.S. at 388 (internal quotations and citations omitted).  Moreover, "'[t]he cause of action accrues even though the full extent of the injury is not then known or predictable.'"  <u>Wallace</u>, 549 U.S. at 391, quoting 1 C. Corman, <u>Limitations of Actions</u> § 7.4.1, at 526-27 (1991).

DeNinno initiated this action on February 26, 2010; thus any Section 1983 claims that accrued prior to February 26, 2008, are barred by the applicable two year statute of limitations.  However, DeNinno points to certain conduct by Defendants which occurred after February 26, 2008.  In particular, DeNinno alleges and presents evidence of the unprivileged denial of an occupancy permit after satisfying the conditions of the 2007 Settlement Agreement [ECF No. 1, ¶¶ 58-61, ECF No. 52-3 pp. 15-24]; Defendants' arbitrary and/or capricious breach of the 2007 Settlement Agreement; Defendants' failure to withdraw and discontinue at least two of the ordinance violation citations, resulting in the issuance of a fine and Notice of Impending Bench Warrant [ECF No. 52-1, pp. 4-7, ECF No. 52-3, pp. 14-20]; and, lastly, Davidson's conduct at a 2011 Penn Hills Planning Commission meeting, when he instructed the Commission to disregard the Constitution (and, by implication, the 2007 Settlement Agreement), and deny DeNinno site

approval for the occupancy of his land. Because each of these unlawful actions occurred after March 2008, Defendants' reliance upon the statute of limitations as a defense to this action fails.

### C.    Procedural Due Process Claim

As DeNinno correctly points out, he has not asserted a procedural due process claim and DeNinno has not amended his Complaint to state such a claim. Accordingly, at this juncture, the Court need not address the substance of Defendants' claim that judgment should be entered in their favor with regard to the violation of DeNinno's procedural due process rights.

### D.    Equal Protection Claim

DeNinno has alleged a "class of one" claim against Defendants for the violation of his Fourteenth Amendment rights to equal protection under the law. In particular, DeNinno alleges that Defendants have deprived him of opportunities provided other citizens of Penn Hills including the opportunity to have a hearing before the Penn Hills Township Zoning Board prior to the issuance of citations for ordinance violations. DeNinno also alleges the unequal enforcement of ordinances, the inability to use a properly issued Mercantile License, and Defendants' conduct in singling DeNinno out for harassment. [ECF No. 1, ¶¶ 12, 20, 33, 62, 63]. Defendants contend that DeNinno cannot sustain his cause of action because he has failed to present evidence of disparate treatment in comparison to other similarly situated individuals. [ECF No. 46, p. 12].

The Equal Protection Clause of the Fourteenth Amendment states that: "[n]o state shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. "[T]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution

through duly constituted agents." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (internal quotations and citations omitted). Thus, the Supreme Court has held that the equal protection clause is "essentially a direction that all persons similarly situated should be treated alike." City of Cleburne, Tex. v. Cleburne Living Ctr. Inc., 473 U.S. 432, 439 (1985).

Although claims brought pursuant to the equal protection clause typically focus on government classifications of groups that are treated differently than others, the Supreme Court has recognized that an individual, or a "class of one," may be entitled to protection if he or she is being unreasonably singled out. Engquist v. Oregon Dept. of Agriculture, 553 U.S. 591, 601 (2008), quoting Olech, 528 U.S. at 564. As the Supreme Court has stated:

> When those who appear similarly situated are nevertheless treated differently, the Equal Protection Clause requires at least a rational reason for the difference, to assure that all persons subject to legislation or regulation are indeed being "treated alike, under like circumstances or conditions." Thus, when it appears that an individual is being singled out by the government, the specter of arbitrary classifications is fairly raised, and the Equal Protection Clause requires a "rational basis for the difference in treatment."

Engquist, 553 U.S. at 602, quoting Olech, 528 U.S. at 564. See Yan v. Penn State University, 2010 WL 3221828 at *5 (M.D. Pa. Aug. 13, 2010) ("A 'class-of-one' claim is predicated on the notion that a plaintiff was treated differently by the government, not based on membership in a protected class, but simply arbitrarily").

The United States Court of Appeals for the Third Circuit therefore has found that to succeed on an equal protection claim under a "class of one" theory, the plaintiff must demonstrate that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment. Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006). To be "similarly situated," parties must be "alike in all relevant aspects." Startzell v. City of Philadelphia, 533 F.3d 183,

203 (3d Cir. 2008) (internal quotation marks omitted).

Defendants move for summary judgment on the grounds that "Plaintiff has produced no evidence regarding Defendants' comparative treatment of other similarly situated individuals, from which a reasonable factfinder could determine whether Defendants … treated him differently." [ECF No. 46, p. 12]. DeNinno's burden in opposition to a motion for summary judgment is to provide some evidence – more than a scintilla, but less than a preponderance – that would establish the existence of a genuine issue as to whether Defendants intentionally and with no rational basis treated him differently from his peers with regard to the issuance of an occupancy permit when an original site plan requiring grading has been abandoned. While the standard "is doubtless difficult for a plaintiff to meet in a zoning dispute," Eichenlaub v. Township of Indiana, 385 F.3d 274, 286 (3d Cir. 2004), DeNinno has presented no evidence showing he could meet it. Because DeNinno has not pointed to a single landowner that was similarly situated and treated differently, summary judgment is properly entered for the Defendants on his equal protection claim. Young v. Twp. of Coolbaugh, 276 Fed. Appx. 206, 209 (3d Cir. 2008)(affirming grant of summary judgment where plaintiff failed to present any evidence that other similarly situated landowners were treated differently). See Sheddy Family Trust ex rel. Sheddy v. Piatt Tp., 404 Fed. Appx. 629, 632 (3d Cir. 2010); Salem Blue Collar Workers Ass'n v. City of Salem, 33 F.3d 265, 272 (3d Cir. 1994)(dismissing plaintiffs' selective prosecution claim because they had not met their burden to offer evidence that the municipal defendant failed to prosecute other similarly situated persons).

### E. First Amendment Claim

DeNinno's First Amendment claim rests upon Defendants' alleged retaliation against DeNinno for seeking redress in federal and state court because of Defendants' ongoing refusal to

grant him an occupancy permit. [ECF No. 1, ¶¶ 10, 15, 28, 29, 63, 65, 66]. Defendants broadly argue, without citation to the record, that summary judgment is appropriate because DeNinno "has produced no evidence from which a reasonable factfinder could conclude that the Defendants took the alleged adverse actions against him as a result of his suit against the municipal officials." [ECF No 46, p. 14]. DeNinno, however, contends that Davidson, in concert with the Penn Hills municipal authorities, repeatedly issued ordinance violation citations, failed to discontinue prior citations and denied him an occupancy permit even after entering into the 2007 Settlement Agreement in retaliation for litigating his property rights.

The Supreme Court has held that an individual has a viable claim against the government when he is able to prove that the government took action against him in retaliation for his exercise of First Amendment rights." Anderson v. Davila, 125 F.3d 148, 160 (3d Cir. 1997) (citing Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). In order to make out a First Amendment retaliation case, the plaintiff must present evidence to show (1) that he engaged in a protected activity; (2) that the government took action against the plaintiff at the time of or after the protected action; and, (3) that the protected activity caused the government to take the action that harmed the plaintiff. Anderson v. Davila, 125 F.3d at 161; Young v. Township of Coolbaugh, 2007 WL 1031543 (M.D. Pa. Mar. 30, 2007) (No. 05-802), aff'd, 276 Fed. Appx. 206 (3d Cir. 2008).

As to the first element, DeNinno engaged in protected activity, since the right to petition the government and access judicial proceedings is clearly protected by the First Amendment. See Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 138, 81 S. Ct. 523, 5 L.Ed.2d 464 (1961) (finding that "[t]he right of petition is one of the freedoms protected by the Bill of Rights."); Borough of Duryea, Pa. v. Guarnieri, 131 S. Ct. 2488, 2498,

180 L. Ed. 2d 408 (2011)( distinguishing claims of public employees from those asserted by members of the general public and finding "[t]he Petition Clause undoubtedly does have force and application in the context of a personal grievance addressed to the government [by a member of the public]").  Thus, if a jury found DeNinno was adversely affected by either Davidson or Penn Hills for filing his claims, DeNinno would be entitled to relief.

As to the second requisite element of a First Amendment retaliation claim, DeNinno also presents evidence of the government's retaliatory conduct against him.  While not clearly defined in terms of dates, Davidson urged a state court trial judge to impose fines against DeNinno for ordinance violations in order to permit the Municipality to recoup expenses associated with DeNinno's litigious behavior.  [ECF No. 48-2, p. 20].  Even if the particular instance referred to by Davidson is outside the statute of limitations, this testimony is relevant to Defendants' later conduct and the ongoing retaliatory animosity displayed by Davidson toward DeNinno, which may have played a role in Defendants' later refusal to issue the occupancy permit pursuant to the terms of the 2007 Settlement Agreement.  See, e.g., Hankin Family Partnership v. Upper Merion Tp., 2012 WL 43610 *10 (E.D. Pa. Jan. 6, 2012) (No. 01-1622) (in deciding a motion for summary judgment, the Court may consider evidence of prior acts which are relevant to claims properly asserted within the limitations period).

As further evidence of the government's action against him, DeNinno points to Davidson's conduct at a Penn Hills Planning Commission meeting in September 2011, where Davidson urged the Commission to again deny the issuance of site approval:

> We don't need to investigate the Constitution.  We don't need to spend another five minutes on it.  He didn't submit the information.  We can't give you a review of materials that he submitted under 61.8 because we have in front of us the same thing you have in front of you.  I'm not sure what Mr. DeNinno's up to, but he's certainly not up to hiring professionals and doing professional applications and this it takes to submit a site plan.  He's up to something else.  I don't care what it

is, but all you have to do this evening is vote no, deny the site plan because it's incomplete.

[ECF No. 52-11, p. 13]. DeNinno has presented undisputed evidence that the site plan was identical to the site plan approved in conjunction with the 2007 Settlement Agreement and so no additional plans were necessary. [ECF No. 52, p.5]. However, at the Planning Commission meeting, Davidson goes on to say "[h]e's here this evening ready to challenge you, ready to say – he's ready to lead you down a path to the U.S. Constitution in 1983, whatever the hell he wants, and I'm saying take five minutes and deny his application because of 16.8 of our – of our local ordinance." [ECF No. 52-11, p. 14].

To establish the third element of a First Amendment claim for retaliation, "a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007). Failing that, "the plaintiff must show that from the evidence gleaned from the record as a whole the trier of fact should infer causation." Id. (quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000)).

Davidson's remarks, coupled with the evidence of Defendants' ongoing breach of the 2007 Settlement Agreement, raise a genuine issue of material fact as to whether Defendants failed to issue the occupancy permit because DeNinno litigated the propriety of denying him an occupancy permit for his land on constitutional grounds pursuant to Section 1983. At a minimum, DeNinno presents sufficient evidence from the record as a whole to permit a jury to infer the required element of causation to sustain a First Amendment claim. Accordingly, as to DeNinno's First Amendment claims, Defendants' Motion for Summary Judgment is denied.

**F.     Fourteenth Amendment Substantive Due Process Claim**

DeNinno's substantive due process claim seeks relief under the Fourteenth Amendment for, *inter alia*, Defendants' arbitrary and capricious refusal to honor the 2007 Settlement Agreement by discontinuing all citations issued against him and by failing to issue an occupancy permit for his land without justification or cause.  [ECF No. 1, ¶¶ 1, 11, 59-64].   Defendants contend that they are entitled to the entry of summary judgment in their favor because DeNinno has failed to present evidence that Defendants' conduct sufficiently "shocks the conscience" so as to support a Fourteenth Amendment claim.  [ECF No. 46, pp. 15-17].

The Fourteenth Amendment of the Constitution provides that no state shall "deprive any person of life, liberty or property without due process of law." U.S. Const. amend. XIV. "'To prevail on a substantive due process claim, a plaintiff must demonstrate that an arbitrary and capricious act deprived them of a protected property interest.'"   County Concrete Corporation v. Town Of Roxbury, 442 F.3d 159, 165 (3d Cir. 2006) (quoting Taylor Investment, Ltd. v. Upper Darby Twp., 983 F.2d 1285, 1292 (3d Cir. 1993).   The Third Circuit has repeatedly held that "real property ownership" is an interest protected by substantive due process." Nicholas v. Pennsylvania State University, 227 F.3d 133, 141 (3d Cir. 2000).  Therefore, when a plaintiff landowner's substantive due process claim alleges that arbitrary governmental actions impinged upon its intended use of property, "the plaintiff has, as a matter of law, impliedly established possession of a property interest worthy of substantive due process protection." DeBlasio v. Zoning Bd. Of Adjustment, 53 F.3d 592, 601 (3d Cir. 1995), *abrogated on other grounds,* United Artists Theatre Circuit, Inc. v. Township Of Warrington, PA, 316 F.3d 392, 400 (3d Cir. 2003).

In the case at issue, DeNinno's substantive due process claim alleges that Defendants arbitrarily interfered with his occupancy of land and his intended use of the property to sell

aggregate pursuant to a mercantile license, even after entering in to the 2007 Settlement

Agreement specifically permitting him to do so. The Court is satisfied that DeNinno's ownership

and use of his property are interests implicated and protected by substantive due process.

Defendants correctly argue, however, that a claim for substantive due process requires

that the conduct resulting in a deprivation of DeNinno's property interest "shock the

conscience." United Artists, 316 F.3d at 399. "[T]he core of the concept [of due process is]

protection against arbitrary action" and "only the most egregious official conduct can be said to

be arbitrary in the constitutional sense." County of Sacramento v. Lewis, 523 U.S. 833, 845-46

(1998).

> While the meaning of the standard varies depending upon factual context, merely
> alleging an improper motive is insufficient, even where the motive is unrelated to
> the merits of the underlying decision. Id. at 400. In Eichenlaub v. Twp. of Indiana,
> 385 F.3d 274 (3d Cir. 2004), we applied the shocks the conscience standard in a
> zoning dispute. Plaintiffs alleged that the township "maligned and muzzled" them,
> applied standards not applied to similar properties, delayed permits and approvals,
> improperly increased tax assessments, and pursued unannounced and unnecessary
> enforcement actions in denying zoning requests. Id. at 286. But in affirming the
> trial court's finding that the alleged conduct did not shock the conscience, we
> noted there were no allegations of corruption, self-dealing, bias against an ethnic
> group, or additional facts that suggested conscience-shocking behavior. Id.

Chainey v. Street, 523 F.3d 200, 220 (3d Cir. 2008). What is shocking depends on context,

United Artists, 316 F.3d at 399-400, but in the land use context, the standard is sufficiently high

to "avoid converting federal courts into super zoning tribunals." Eichenlaub, 385 F.3d at 285.

There are three fact scenarios for which courts in this Circuit have recognized liability for

the violation of substantive due process rights in the land use arena. The first scenerio implicates

behavior on the part of a state actor that is predicated upon self-dealing or corruption, where the

state actor or close associate will reap a financial benefit by rezoning a parcel of land or denying

a particular land use permit. See, e.g., Hankin Family Partnership v. Upper Merion Tp., 2012

WL 43610 *20 -*22 (evidence of defendants' collusion and self-dealing implicates conscience-shocking behavior sufficient to defeat motion for summary judgment).

The second scenario implicates disparate treatment predicated upon racial or ethnic status or a constitutionally protected activity. See, Andrews v. Bureau of Codes Administrative Office, 2012 WL 610333 *10-11 (M.D. Pa. Feb. 24, 2012) (No. 08-1669) (substantive due process claim survives motion for summary judgment where evidence suggests disparate treatment toward minority homeowners as compared to similarly situated non-minority homeowners); Associates in Obstetrics & Gynecology v. Upper Merion Twp, 270 F.Supp.2d 633 (E.D.Pa.2003) (local officials accused of seeking to interfere with otherwise constitutionally protected activity at the women's health site).

The third scenario implicates conduct which is intentionally injurious and knowingly committed without justification. See, e.g., Beard v. Borough of Duncansville, 652 F.Supp.2d 611. 624 (W.D. Pa. 2009) (Borough deliberately took property of landowner contrary to prior Court opinion and contrary to legal advice of Borough Solicitor at a public meeting that the Borough Code did not authorize taking of property).

A thorough review of cases decided after United Artists as to conduct deemed to "shock the conscience" reveals that the conduct alleged in this case does not meet the very substantial threshold to sustain a substantive due process claim as a matter of law. At best, the conduct at issue may fall within the third scenario. There is no evidence that Defendants' alleged misconduct is the result of self-dealing or corruption, or that DeNinno was biased against as a member of a protected class. Rather, DeNinno has alleged and presented evidence that Defendants, likely motivated by Davidson's personal animus toward DeNinno, have engaged in a campaign of obstruction and harassment through their failure to rescind all citations for ordinance violations and their ongoing refusal to issue the agreed upon occupancy permit. The

alleged conduct points to a purposeful intention to delay and obstruct DeNinno's occupancy of the land.

Given this Court's ruling as to the applicability of the two year statute of limitations to Plaintiff's claims, this Court's review is limited to whether the evidence of Defendants' conduct occurring after February 26, 2008 "shocks the conscience." Therefore, the conduct at issue includes:

1. Defendants' refusal to issue an occupancy permit as required by the 2007 Settlement Agreement;

2. Defendants' refusal and/or failure to withdraw and discontinue all outstanding citations;

3. Defendant's delayed notification that the hearing on the erroneously unresolved citations had been discontinued;

4. Defendant Davidson's demand for a new site plan, contrary to the express terms of the 2007 Settlement Agreement; and,

5. Defendant Davidson's admonition to the Planning Commission that there was no need for review under the Constitution and no need to spend time reviewing DeNinno's site plan – the Planning Commission should "just vote no."

It is the position of Defendants that the evidence does not demonstrate that their conduct is egregious nor that it shocks the conscience. Davidson's deposition testimony indicates that after the 2007 Settlement Agreement, he did not issue any citations against DeNinno and, indeed, up until the date of his deposition in February 2011, he had no contact with DeNinno. [ECF No. 48-2, pp. 21, 30-32]. It is undisputed that Davidson was not involved in the drafting of the 2007 Settlement Agreement and there is no evidence as to when he received it. Id. During his deposition, Davidson also acknowledged his belief that certain prerequisites to an occupancy

permit outlined in the 2007 Settlement Agreement remained unresolved. [ECF No. 48-2, pp. 31-33]. In the absence of finalizing a property line dispute, DeNinno had not yet made the changes to the fence line and landscaping that he was required to make by the terms of the 2007 Settlement Agreement and thus the occupancy permit may not have been issued. Id. It is also undisputed that at some point during the relevant time period, Robert D. Hunter, Code Enforcement Officer for the Defendant Borough received a citizen complaint against DeNinno for dumping toxic waste on the property at issue. Hunter found the claim to meritless and took no action against DeNinno. [ECF No. 48-1, pp. 53-54].

Defendants' conduct, particularly that of Defendant Davidson, indicates that this is not a "run-of-the-mill dispute between a developer and local government officials." Maple Properties, Inc. v. Township of Upper Providence, 151 Fed. Appx. 174, 179 (3d Cir. 2005). However, the evidence proffered by DeNinno does not establish conduct that is intentionally injurious and knowingly committed without justification as required by the third scenario. In addition, the record substantiates a long history of animosity between the parties. Substantive due process, however, does not extend to a dispute centered on personal animosity. The Court of Appeals for the Third Circuit has consistently recognized the limited scope of a substantive due process claim and declined to extend constitutional protection to a dispute centered on personal animosity. "We have previously recognized that the politics and animosities that often animate local decision-making are not matters of constitutional concern. The conduct of officials in this case may have been 'unfair' or 'improper' from [plaintiff's] perspective, but there is no evidence of the patently egregious behavior recognized in prior cases to constitute a substantive due process claim." Maple Properties, at 180.

Like the facts presented in <u>Maple Properties</u>, DeNinno points to no specific evidence sufficiently egregious to bring Defendants' conduct within the prevailing "shocks the conscience" test for substantive due process violations in land disputes.[2] Furthermore, DeNinno does not cite to any case law whatsoever in support of his position. Having thoroughly reviewed the evidence of record in the light most favorable to DeNinno, the Court finds that the evidence adduced during discovery, while pointing to a longstanding dispute between the parties and the likely breach of the 2007 Settlement Agreement, does not support a Fourteenth Amendment substantive due process claim.[3] Accordingly, Defendants' Motion for Summary Judgment as to DeNinno's substantive due process claim is granted.

### G.    Monell

Title 42 U.S.C. § 1983 provides in relevant part:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ...."

"A municipality or other local government may be liable under this section if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation. <u>See</u> <u>Monell v. Department of Social Services of City of New York</u>, 436 U.S. 658, 692, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). But, under § 1983, local governments are responsible only for 'their own illegal acts.' <u>Pembaur v. Cincinnati</u>, 475 U.S. 469, 479, 106 S.Ct.

---

[2] In Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment, DeNinno's counsel makes broad, sweeping statements that he has been cited "hundreds upon hundreds" of times to the sum of "$500,000 to $1,000,000 dollars" in potential fines. [ECF No. 51, p. 21]. Yet, he fails to cite to the record and these statements are not supported by the record presented to the Court.

[3] There is no record on the state court docket that DeNinno or his legal counsel ever filed a motion to enforce the 2007 Settlement Agreement and, indeed, the last docket entry on January 9, 2008, indicates the action was settled and discontinued. See, <u>DeNinno v. Zoning Hearing Board of Penn Hills Twp.</u>, PA-CCP-ALG:SA-07-001360, PA Court of Common Pleas, Allegheny County (docket last checked 4/25/2012).

1292, 89 L.Ed.2d 452 (1986) (citing <u>Monell</u>, 436 U.S., at 665–683, 98 S.Ct. 2018)." <u>Connick v.</u>

<u>Thompson</u>, 131 S. Ct. 1350, 1358-59, 179 L. Ed. 2d 417 (2011).

"Plaintiffs who seek to impose liability on local governments under § 1983 must prove

that 'action pursuant to official municipal policy' caused their injury. Official municipal policy

includes the decisions of a government's lawmakers, the acts of its policymaking officials, and

practices so persistent and widespread as to practically have the force of law. These are 'action[s]

for which the municipality is actually responsible." <u>Connick v. Thompson</u>, 131 S. Ct. at 1358-59

(citations omitted).  Liability will also attach when an individual has policy making authority

rendering his or her behavior an act of official government policy.  <u>Pembaur v. City of</u>

<u>Cincinnati</u>, 475 U.S at 480-81.

In seeking the entry of summary judgment on behalf of Penn Hills, Defendants contend

that DeNinno has failed to present evidence that his injury was the result of any Penn Hills'

official policy or conduct.  [ECF No. 46, p. 18].  DeNinno, however, points to Davidson's role as

the Penn Hills land use policymaker (the Director of the Penn Hills Planning Commission and

former Code Enforcement Director), and his conduct in retaliating against DeNinno by seeking

the recovery of litigation expenses through the issuance of citations against DeNinno.  [ECF No.

51, p. 22].  The evidence adduced also raises an issue of fact as to whether Penn Hills, through

and/or at Davidson's direction, delayed the issuance of an occupancy permit to DeNinno and

violated the express terms of the 2007 Settlement Agreement in retaliation for DeNinno's prior

litigation. The testimony and exhibits may be interpreted to present a concerted effort to override

the terms of the 2007 Settlement Agreement by the Penn Hills Planning Commission and the

Penn Hills Code Enforcement Department at Davidson's direction.  In this case, it cannot be said

that Penn Hills is entitled to the entry of judgment in its favor on <u>Monell</u> grounds.

**H. Qualified Immunity**

Davidson alternatively argues that summary judgment should be granted in his favor because he is entitled to qualified immunity.

> "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). There are two related but distinct inquiries in a qualified immunity case. One is whether the defendant's conduct violated the plaintiff's civil rights; the other is whether the right in question was clearly established at the time of the violation.

Schneyder v. Smith, 653 F.3d 313, 318 (3d Cir. 2011). Having already found that, at the very least, there is a question of fact concerning whether Davidson's actions violated DeNinno's First Amendment rights to seek redress in the courts, the question becomes whether the particular right at issue was clearly established at the time.

"Ordinarily a constitutional duty is not clearly established simply because of the existence of a broad imperative like the one against "unreasonable ... seizures," or equal protection. Id. at 329, quoting Anderson v. Creighton, 483 U.S. 635, 639 (1987). Rather, to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id., quoting Anderson at 640. "The ultimate question . . . is whether the defendant had '"fair warning" that his conduct deprived his victim of a constitutional right.'" Id., quoting Hope v. Pelzer, 536 U.S. 730, 740 (2002).

Here, the wrongfulness of Davidson's actions appears to be self-evident. It should have been clear to any reasonable official, particularly one who has worked within the Penn Hills municipality for over 20 years as both the Code Enforcement Director and Director of the Planning Department, that preventing the issuance of an occupancy permit in contravention to

the express terms of a prior Settlement Agreement in retaliation for filing legal process violated DeNinno's rights. Accordingly, Davidson is not entitled to qualified immunity.

### I. Younger abstention

Defendants contend that this Court should abstain from ruling on this case pursuant to the principles enunciated in Younger v. Harris, 401 U.S. 37, 91 S. Ct. 746, 27 L.Ed.2d 669 (1971). In Younger, a state criminal defendant filed a federal action that alleged that the statute underlying his state prosecution violated the Constitution; he requested that its enforcement be enjoined. He thereby sought to reframe the issues in federal court and to convert what would ordinarily be a defense to a criminal prosecution into an affirmative claim for relief. See Special Souvenirs, Inc. v. Town of Wayne, 56 F.Supp.2d 1062, 1071 (E.D. Wis. 1999). The Court concluded that absent extraordinary circumstances, the federal court should abstain from hearing the case based on principles of equity, comity and federalism. Younger, 401 U.S. at 43–50, 91 S.Ct. 746. Younger 's holding has since been expanded to apply (1) to cases involving civil enforcement proceedings in state court rather than criminal prosecutions, see Huffman v. Pursue, Ltd., 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975); (2) to cases involving the integrity of administration of the state's judicial system, see Juidice v. Vail, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977); (3) in cases involving two private parties, see Pennzoil Co. v. Texaco Inc., 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) and (4) in light of certain pending administrative proceedings, see Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc., 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986) and Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982).

However, as a threshold condition, Younger applies only when the relief the plaintiff seeks in federal court would interfere with an ongoing state judicial proceeding. Marks v.

Stinson, 19 F.3d 873, 882 (3d Cir. 1994) ("A federal court will only consider Younger abstention when the requested relief would constitute federal interference in state judicial or quasi-judicial proceedings"). Here, Defendants point to DeNinno's statutory appeal at SA-02-1065 in the Court of Common Pleas of Allegheny County, which Defendants contend is "presently pending in the state court." The last docket entry for the action is listed as March 29, 2007, when a transcript of the case was filed in the Court of Common Pleas of Allegheny County. See, DeNinno v. Penn Hills Planning Commission, PA-CCP-ALG:SA-02-001065. Presumably, all claims pending in that action were merged into the 2007 Settlement Agreement entered between the parties at SA-07-001360, the breach of which forms the predicate to DeNinno's current federal claims. [ECF 52-2, p. 6]. Defendants' disingenuous reliance on this long dead statutory appeal is patently insufficient for the appropriate application of Younger and the motion for abstention is denied.

IV.     CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment [ECF No. 45] is denied

with respect to DeNinno's First Amendment claim but is granted with respect to DeNinno's

substantive due process and equal protection claims.  An appropriate Order follows.

AND NOW, this 26th day of April, 2012, upon consideration of the Motion for

Summary Judgment filed by Defendants [ECF No. 51], and for the reasons set forth in the

Opinion entered contemporaneously with this Order, it is HEREBY ORDERED that the

Defendants' Motion for Summary Judgment as Plaintiff's First Amendment claim is DENIED

and the Defendants' Motion for Summary Judgment as to Plaintiff's Equal Protection and

Substantive Due Process claims is GRANTED.

BY THE COURT,

/s/  Maureen P. Kelly
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

cc:     All counsel of record via CM/ECF